IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RONALD DEFUSCO | ) | |
| | ) | |
| vs. | ) | C.A. No. 05-157T |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS OBJECTION TO PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Introduction

Petitioner Ronald Defusco (Defusco) files this motion pursuant to 28 U.S.C. § 2255. In reliance upon Blakely v. Washington, 124 S.Ct. 2531 (2004), *et alia*, Defusco argues that his sentence violates the Sixth Amendment because the sentence was based, in part, upon sentencing guideline enhancements which "were not proven (*sic*)." He further argues that his counsel rendered ineffective assistance for failing to tell him he could receive an enhancement for obstruction of justice, for failing to "effectively object to 18 levels of increased penalty enhancements," and an increase in Criminal History Category (CHC). He is wrong.

Travel

On September 4, 2002, a grand jury in the District of Rhode Island returned a 12-count superseding indictment against Defusco. Count 1 alleged that from about December 2001 through at least April 2002, Defusco conspired to commit mail and wire fraud and to transport

5

stolen property interstate, in violation of 18 U.S.C. §§ 371, 1341, 1343, 2314, and 2326. The remaining counts charged him with corresponding substantive violations based on individual acts committed as part of the scheme. The superseding indictment specifically included, both by language and statutory reference, that Defusco's scheme was conducted via telemarketing aimed at individuals over the age of 55.

Defusco filed a motion to suppress certain statements that he had made to investigators and evidence that had been seized from his house pursuant to a search warrant. Following a January 21, 2003 evidentiary hearing, at which Defusco testified, the court denied his suppression motion. On January 24, 2003, Defusco pled guilty to all 12 counts in the indictment. At that plea hearing, the Court reviewed with Defusco the specific portions of the charges which carried enhanced statutory penalties.

Prior to the June 20, 2003 sentencing hearing counsel for Defusco filed objections to the Presentence Report (PSR). Those objections were to the omission of a reduction for acceptance of responsibility, to the amount of loss, that Defusco should receive a downward departure based on his drug addiction, and that it was inappropriate to add 2 levels to his CHC for commission of the offense within two years of the end of a prior sentence. At the sentencing hearing, the court reaffirmed its earlier finding that Defusco had perjured himself in testifying at the suppression hearing and imposed a two-level obstruction of justice enhancement on that basis (a ruling that was unopposed at the sentencing and that was not challenged on appeal) and denied Defusco an acceptance of responsibility reduction.

Defusco argued that the $163,039 in losses suffered by Martha Moore should be excluded from the loss calculation, primarily because of her difficulty in recalling the events in question.

The court ruled that the issue was irrelevant because even if the $163,039 were excluded from the analysis, the undisputed remaining losses ($229,000) still exceeded the $200,000 threshold that triggered a 12-level increase under USSG § 2B1.1(b)(1)(G). The court also ruled in the alternative that there was sufficient evidence linking Moore's losses to Defusco's fraud.

Over Defusco's objection, the court imposed a two-level increase under USSG § 2B1.1(b)(2)(A), finding that his fraudulent conduct had involved "mass-marketing" for purposes of that provision. The court observed that in addition to the 30 identified women Defusco had contacted (nine of whom sent him money), "he was working from a list of 666 other people."

The court also found that Defusco had targeted at least one vulnerable victim (a ruling not challenged on appeal), meriting a further two-level increase under USSG § 3A1.1(b)(1).

Defusco's total offense level was 24 and he was in Criminal History Category III, yielding a sentencing range of 63-78 months of imprisonment. After denying the government's motion for an upward departure, the court addressed and denied Defusco's oral motion for a downward departure based on alleged harsh conditions of confinement at the Wyatt Detention Center. The court then sentenced Defusco to 63 months in prison.

Defusco appealed to the First Circuit Court of Appeals raising issues that there had been an error in the loss calculation, that he should have received a downward adjustment for acceptance of responsibility, that the finding that he engaged in a mass-marketing scheme was improper and that he should have received a downward departure due to harsh conditions at the Wyatt Center. He did not raise any issues related to the holding in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000). The Court of Appeals rejected these arguments and affirmed

the conviction. The mandate on that decision was issued on February 27, 2004. Defusco did not file a writ of certiorari, nor has he filed a previous 28 U.S.C. § 2255 motion.

Argument - The Sixth Amendment Violation

In United States v. Booker, 125 S.Ct. 738 (2005), the Court held that the Sixth Amendment, as construed in Blakely, applies to the Sentencing Guidelines. The Court reaffirmed the defendant's right to have the jury find the existence of any fact, except a prior conviction, that the law makes essential to a defendant's punishment. The Court noted that the mandatory nature of the guidelines combined with judicial fact-finding implicated the Sixth Amendment. The Court concluded that the guidelines are only advisory in nature.

The holding of Booker derives from the holdings in Blakely and Apprendi. The holdings of Blakely and Apprendi were new constitutional rules of criminal procedure. Under Teague v. Lane, 489 U.S. 288 (1989), they are not retroactively applicable to cases that became final before those decisions were announced. See Schriro v. Summerlin, 124 S. Ct. 2519, 2524-26 (2004) (Teague bars retroactive application of Apprendi-based death penalty decision of Supreme Court in Ring v. Arizona, 536 U.S. 584 (2002)); Sepulveda v. United States, 330 F.3d 55, 59-63 (1st Cir. 2003) (Apprendi is not retroactively applicable under Teague); Orchard v. United States, 332 F. Supp.2d 275, 277 (D. Me. 2004) (holding that Blakely is not retroactively applicable under Teague and collecting cases on point); United States v. Stancell, 346 F. Supp.2d 204 (D.D.C. 2004). Defusco's indictment and guilty plea complied with the holding of Apprendi. His conviction was final before both Blakely and Booker were decided. Booker is itself a new constitutional rule of criminal procedure, and like Blakely and Apprendi, should not be applied

retroactively. See Varela v. United States, __F.3d__, 2005 WL 367095 (11th Cir., decided 2/17/2005) (Booker does not apply retroactively to cases on collateral review); United States v. McReynolds, 397 F.3d 479 (7th Cir. 2005) (Booker does not apply to criminal cases that became final before January 12, 2005).

Defusco's Ineffective Assistance Of Counsel Argument Fails to Sustain a Cognizable Claim

The Supreme Court has established a two part test to evaluate ineffective assistance claims. Strickland v. Washington, 446 U.S. 668, 667 (1984); Lema v. United States, 987 F.2d 48, 52 (1st Cir. 1993). A party advancing such a claim has the heavy burden of proving: 1) that his attorney's performance fell below an objective standard of reasonable effectiveness, and 2) that he was prejudiced as a result of his attorney's deficient performance. Id. To meet this burden, the defendant must establish that a counsel's performance was not within the wide range of reasonable professional assistance. Singleton v. United States, 26 F.3d 233, 238 (1st Cir.), cert. denied, 115 S. Ct. 517 (1994). In determining whether counsel's performance fell below the relevant benchmark, "[j]udicial scrutiny of counsel's performance must be highly differential", and "every effort [should] be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (other citations and internal quotations omitted).

Here the record clearly refutes Defusco's claims. At the plea hearing on January 24, 2003, Defusco, while under oath, informed the court that there were no other promises other than those

written in the plea agreement. He was told in no uncertain terms by the court that (1) the court was not a party to the agreement, (2) that the court was not required to accept the government's recommendations, (3) that the court will make an independent decision as to sentence after it has reviewed the PSR, (4) that no one could tell with certainty what guideline range would apply, (5) that the court could go above the guideline range if it felt the facts warranted it, and (6) that Defusco understood that the statutory maximum was 175 years. (1/24/03 Plea Hearing at 16-18, 20-21.)

Defusco was advised and agreed that he understood that by pleading guilty he was relieving the government of the burden of proving its case beyond a reasonable doubt. The court had Defusco listen to the facts the government would prove if the case had gone to trial. Defusco agreed, under oath, that those facts were true. (1/24/03: 23-24, 32).

At the sentencing hearing held on June 20, 2003, the court asked Defusco whether he had read the PSR and discussed it with his counsel. Defusco stated that he had. There were no objections as to the facts as stated in the PSR. (6/20/03: 3). At no time during that hearing did Defusco claim he had been told by his counsel that the plea agreement prevented the court from applying an enhancement for obstruction of justice.

Counsel for Defusco filed and argued a number of objections to the PSR. That the court disagreed with those objections does not equate to a finding of ineffective assistance of counsel. Defusco's claims that the government was required to prove certain items beyond a reasonable doubt to a jury before he could be sentenced based upon them is unsupported. As he had pled guilty to a superseding indictment which contained both language and statutory references to

penalty enhancements and agreed to the facts recited by the government at the time of the plea and as contained in the PSR, he obviated that need.

Petitioner's own words, under oath at the plea hearing, as well as his responses to the court at the sentencing hearing, and his failure to raise any claim of faulty advice from counsel concerning the obstruction enhancement belie his current claims. Defusco's claims are not credible as demonstrated by the record. He does not profess actual innocence. He has failed to demonstrate either that his counsel's performance was substandard under Strickland or that he was prejudiced thereby.

Conclusion

For those reasons set forth herein, the petition should be denied and Judgment entered for the United States.

Respectfully submitted,

Robert Clark Corrente
United States Attorney

Stephanie S. Browne
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of May 2005, I served a copy of the within Government's Memorandum In Support of Its Objection To Petitioner's Motion To Vacate, Set Aside, Or Correct Sentence Pursuant To 28 U.S.C. § 2255, by ordinary mail and postage prepaid, to:

Ronald Defusco
Reg. No. 05196-070
FCI Fairton
P.O. Box 420
Fairton, NJ 08320

Paula Hasey

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

* * * * * * * * * * * * * * CRIMINAL ACTION
UNITED STATES OF AMERICA * NO. 02-059T
Government*
* FRIDAY,
VS. * JANUARY 24, 2003
*
RONALD J. DeFUSCO *
Defendant *
* * * * * * * * * * * * * * Providence, RI

HEARD BEFORE THE HONORABLE ERNEST C. TORRES
CHIEF JUDGE
(PLEA)

A-P-P-E-A-R-A-N-C-E:

For the Government: Stephanie S. Browne, Esquire
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

For the Defendant: John M. Cicilline, Esquire
Bevilacqua & Cicilline
387 Atwells Avenue
Providence, RI 02909

Court Reporter: Judith L. Montie
203 Federal Courthouse
1 Exchange Terrace
Providence, RI 02903

is part of the agreement?

A No.

Q Has anybody made any other promises to you besides the promises contained in that document that have caused you to decide to pled guilty to these charges?

A No.

Q Has anyone made any threats of any kind against you that have caused you to decide to plead guilty?

A No.

Q Is it correct to say that you are making this decision voluntarily because you think it is in your best interest?

A Yes.

Q Do you understand, Mr. DeFusco, that this agreement, this plea agreement is between you and the United States Attorney. The Court is not a party to the agreement. The Court has made no promises of any kind to you, do you understand that?

A Yes, I do.

Q Do you understand that although the United States Attorney has to keep her promises, the Court doesn't have to accept any recommendations that the United States Attorney might make with regard to your

sentencing or anything else?

A I understand that.

Q Did Mr. Cicilline explain to you the sentencing process, that the Probation Department will prepare a presentence report after talking with you and giving you an opportunity to present information, that they will prepare a presentence report and the Court will review that report and will make an independent decision as to what sentence you'll receive based largely on what's in that report?

A Yes.

Q Has Mr. Cicilline also explained to you what the Federal sentencing guidelines are and generally how sentences are calculated under the guidelines?

A Yes, he has.

Q Has he given you any estimate as to what sentence he thinks you are likely to receive if your guilty plea is accepted?

A Yes, he has.

Q Do you understand that although Mr. Cicilline is an experienced criminal defense attorney, that neither he or anyone else can tell you now with any certainty what guideline range applies in your case because we don't have all of the facts necessary

to make that calculation, do you understand that?

A Yes.

Q And do you also understand that even if somebody could tell you for sure what guideline range applies, you don't have any guarantee that your sentencing would be within that range because the Court could give you a sentence that is more severe or less severe than what the guideline range would otherwise call for if the Court felt that the facts warranted it, do you understand that?

A Yes, I do.

Q Do you understand, did you hear Ms. Browne earlier state what the maximum penalties were for the crimes to which you propose to plead guilty?

A I didn't want to but, yeah, I heard them.

Q You heard them. Do you remember also reading in the plea agreement that spelled out what the maximum penalties were?

A Yes.

Q Did you initial that change at the very bottom of page three?

A Yes, I did.

Q Just to make certain there is no misunderstanding, I am going to basically repeat what Ms. Browne said about the maximum sentences. If your

Q If your guilty plea on those counts -- in fact, this applies to Counts 2, through 10, 2, 3, 4, 5, 6, 7, 8, 9 and 10.

MS. BROWNE: It also applies to Count 1, Your Honor, the conspiracy.

THE COURT: Okay. It doesn't apply to Count 11, though, does it?

MS. BROWNE: No, Your Honor. You are correct.

THE COURT: Let me start over again.

Q If your guilty plea is accepted, on Count 1, the basic sentence would be five years followed by three years of supervised release and a fine of up to $250,000 or twice the gain or loss whichever is greater and a special assessment of at least $100. If it is determined that this scheme involved telemarketing to target elderly people, there would be a ten-year prison sentence added onto the five. So it would be 15 years on that count.

On Counts 2 through 10, if your guilty plea is accepted, the same thing would apply. You could receive a base sentence of five years on each of those counts followed by a period of three years of supervised release, a fine of up to $250,000 or twice the gross gain or loss, a special assessment of $100 on each of

those counts and once again if it is determined that you used the telemarketing to target elderly people, then there would be an additional ten years on each of those counts. So each of those counts would be carry a sentence of up to 15 years in prison.

On Count 11, you could receive a sentence of up to ten years in prison, a fine of up to $250,000 or twice the amount of the gain or loss whichever is greatest, three years of supervised release and a special assessment of at least $100.

So if you add all of those things up, Mr. DeFusco, you could be looking at up to 175 years in prison, fines of up to $3,000,000 or twice the gross gain or loss, a period of supervised release of three years and special assessments totaling at least $1200. In addition to that, the Court could require you to pay restitution to any individuals who were victimized by any of these offenses.

Do you understand what the maximum penalties are?

A Yes, I do.

Q Do you also understand, Mr. DeFusco, that if your guilty plea is accepted, you cannot later change your mind and withdraw the plea unless the Court allows you to do that?

First of all, every individual charged with a crime has what's called the right to remain silent and the presumption of innocence. That means you don't have to say anything and you especially don't have to say anything that incriminates you which is what you are doing when you plead guilty. And you are, as I said before, relieving the Government of the obligation to prove you guilty. The law no longer presumes that you are not guilty if you admit your guilt and the Government no longer has to prove you guilty if you have admitted that you are guilty.

If you chose to have a trial, if you chose to plead not guilty and have a trial, at the trial you would be entitled to be represented by an attorney. If you could not afford an attorney, the Court would appoint an attorney to represent you without any charge to you. Through your attorney you would have the right to question or cross-examine any witnesses that the Government might call to testify against you. You would have the right to present any witnesses that you may wish to have testify in your favor. If the Jury found you guilty, you could appeal not only any sentence that the Court might impose but also you could appeal the finding of guilt. You could claim that the Jury made a mistake that you really were not guilty. If you plead

guilty, as I said, there is no trial and although you may or may not be able to appeal your sentence, depending on the circumstances, you would not be able to appeal claiming that there had been a mistake as to your guilt because you will have admitted your guilt.

Do you understand all of those rights?

A Yes, I do.

Q And do you understand the difference between pleading guilty and pleading not guilty?

A Yes, I do.

THE COURT: Okay. You may be seated, Mr. DeFusco.

I am going to ask Ms. Browne to briefly summarize the facts that she says the Government would be able to prove if this case went to trial and when she finishes -- I want you to listen carefully because when she finishes, I am going to ask you whether you agree that all of those things are true and that the Government would be able to prove them.

MS. BROWNE: Thank you, Your Honor. If the case had gone to trial, the Government's evidence would show that on April 3rd of 2002, the Narragansett Police had received information from the Puyallup, Washington Police that it had gotten a fraud complaint from Esther Werner, a 76-year old woman. She said she

money; however, each had been told that they had won a prize and were solicited for specific sums of money. And each was also over the age of 55.

That would be the evidence at trial, Your Honor.

THE COURT: Mr. DeFusco, would you stand up please. Did you hear everything that Ms. Browne said?

DEFENDANT DeFUSCO: Yes, I did.

THE COURT: And do you agree that all of those things are true and that if this case went to trial the Government would be able to prove them?

DEFENDANT DeFUSCO: Yes.

THE COURT: All right. Having heard everything you have been told about the nature of the charges, the things the Government would have to prove in order to convict you, the maximum penalties that could be imposed if your guilty plea is accepted, the rights that you are forfeiting by pleading guilty and everything else that you have been told, do you still wish to plead guilty to all twelve counts of this indictment?

DEFENDANT DeFUSCO: Yes, I do.

THE COURT: All right. You may be seated, Mr. DeFusco.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

* * * * * * * * * * * * * * * *
*
UNITED STATES OF AMERICA * JUNE 20, 2003
*
VS. * 9:30 A.M.
*
RONALD Defusco, a/k/a *
MIKE WALLACE *
*
* * * * * * * * * * * * * * * * PROVIDENCE, RI

BEFORE THE HONORABLE ERNEST C. TORRES

DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT: Lee Vilker
U.S. Attorney's Office
50 Kennedy Plaza
Providence, RI 02903

FOR THE DEFENDANT: Bevilacqua & Cicilline
By: John M. Cicilline, Esquire
387 Atwells Avenue
Providence, RI 02909

Court Reporter: Angela M. Gallogly, RPR
One Exchange Terrace
Providence, RI 02903

(20 JUNE 2003)

THE COURT: Good morning.

THE CLERK: This is Criminal Action, 02-59, United States of America vs. Ronald Defusco.

THE COURT: This case is here for sentencing, and Mr. Defusco having previously pled guilty to several counts of mail fraud, wire fraud, and conspiracy to commit mail fraud, wire fraud, and interstate transportation of stolen property.

MR. CICILLINE: Judge, before we get to that, can I ask the Court permission, I have a cell phone with me, it is on vibrate, I've left the number with the clerk where my jury is sitting. In the event that the phone rings or vibrates, could I ask the Court's permission to interrupt the proceeding, or at least let the Court know that I'm receiving a phone call from the jury. You know, I understand, I don't want to --

THE COURT: Yes, I had that discussion with Judge Darrigan yesterday, Mr. Cicilline, and you are here now for the duration of the sentencing hearing; if you do get a call, though, you ought to let them know -- I'll try to give you an estimate as to how much longer you will be.

MR. CICILLINE: Thank you.

THE COURT: All right, Mr. Cicilline and Mr.

Defusco, have you both had an opportunity to review and discuss the Presentence Report?

MR. CICILLINE: Yes, I have your Honor.

THE DEFENDANT: Yes.

THE COURT: There are a number of issues that we need to resolve here. I will try to summarize them as best I can, and counsel can tell me if I have omitted anything, and I'll take them pretty much in the order in which they should be addressed. First of all, the -- well, let me separate the legal issues from the factual issues. As I understand it, there are no objections to the facts as set forth in the Presentence Report; is that correct?

MR. VILKER: None from the Government, your Honor.

MR. CICILLINE: That's correct, your Honor.

THE COURT: Now, the issues that are to be addressed are, first of all, the defendant objects to the manner in which the probation officer calculated the amount of the loss. The Government objects to the probation officer's failure to increase the offense level by 2 levels on the ground that this was mass marketing. The Government also objects to the probation officer's failure to increase the offense level by 2 levels on the ground that the Vulnerable